IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ERNEST STINSON**<br><br>                    **Plaintiff,**<br><br>            v.<br><br>**TRIPLE CANOPY, INC.**<br><br>                    **Defendant.** | **CIVIL ACTION NO. 21-4557** |

## MEMORANDUM OPINION

Rufe, J.                                                                                  July 26, 2023

Plaintiff Ernest Stinson has brought this action against his current employer, Defendant Triple Canopy Inc., alleging religious discrimination and retaliation in violation of Title VII of the Civil Rights Act[1] and the Pennsylvania Human Relations Act ("PHRA").[2] Defendant has moved for summary judgment on Plaintiff's claims.[3] For the reasons stated below, Defendant's motion will be granted.

## I.      BACKGROUND[4]

Defendant provides security services to the United States Government, including the Department of Homeland Security ("DHS") and the Federal Protection Service ("FPS"), a division of DHS.[5] In October 2017, Defendant contracted with DHS and FPS ("the FPS Contract") to provide FPS with Protective Security Officers ("PSOs").[6] PSOs perform services including

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] 43 Pa. Stat. § 951, *et seq.*

[3] Def.'s Mot. Summ. J. [Doc. No. 18].

[4] Contrary to Judge Rufe's Policies and Procedures for Summary Judgment, the parties did not agree upon a joint statement of undisputed material facts. Instead, Defendant filed a statement of facts it contends are undisputed, and Plaintiff responded with both an answer denying or admitting the facts, as well as numerous additional facts. As Plaintiff is the non-moving party, the Court draws the factual background from Plaintiff's response to Defendant's statement of facts and from the documents of record.

[5] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 2(a).

[6] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 25(a).

"roving[,] fixed interior and exterior patrols[,] and screening of personnel entering and exiting federal buildings."[7]

In February 2018, Defendant hired Plaintiff to work as a PSO under the FPS Contract.[8] Plaintiff has been a practicing Muslim for over twenty years, and he had a full-length beard at the time he was hired.[9] As a PSO, Plaintiff is subject to DHS' Security Manual and Resources Tool ("SMART") Book, which sets forth the following "grooming standards":

> "Faces must be clean-shaven, except for mustaches and sideburns. Men's sideburns must be neatly trimmed, extending no lower than the bottom of the ear, constant in width, and end with a clean-shaven horizontal line. Mustaches are to be neatly trimmed; they may extend no more than a half-inch beyond and a fourth-inch below each corner of the lips and go no higher than the nose line."[10]

During Plaintiff's orientation, FPS-Philadelphia Contract Manager Robert McNamee informed the new PSOs that they should "come in the next day in suit and tie and clean shaven."[11] Plaintiff asked McNamee whether he may receive a religious accommodation for his beard, and McNamee stated that Defendant "do[es] not accept religious accommodations" to the grooming requirement, and "if Plaintiff's religion was that important to him then this was not the job for him, or words to that effect."[12]

## A. The Accommodation Request

In August 2018, Plaintiff's supervisor observed that Plaintiff was not clean shaven in accordance with the grooming standards.[13] Plaintiff told his supervisor that he could not shave his

---

[7] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 11(a).

[8] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 25(a).

[9] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶¶ 60, 65.

[10] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 15(a).

[11] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 64.

[12] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 66.

[13] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 28(a).

facial hair due to his Muslim faith, and Defendant did not discipline Plaintiff for the violation.[14] At

some point thereafter, Plaintiff reviewed the SMART Book and discovered that employees may

seek "religious accommodations [as to] the grooming standards."[15] Based on this information,

Plaintiff requested a religious accommodation from Defendant.[16] Plaintiff's request comprised a

written note from his Imam, the religious leader at Plaintiff's mosque, stating the following:

> "Brother Ernest Stinson is a practicing believer in the faith of Islam. I ask that you
> excuse his facial hair. It is permissible to shave it for medical reasons, if one
> considers it to be necessary. Trimming and cutting short the beard is allowed, but
> one should not shave it, if it is not for a valid medical reason."[17]

On February 15, 2019, McNamee emailed Plaintiff's request to Lenora Barbagello, the

Contracting Officer Representative ("COR") who oversees the FPS Contract.[18] McNamee's email

stated, in full: "I have attached a request submitted by PSO Stinson from his mosque requesting a

waiver from shaving for religious reasons. I am available to discuss at your convenience. Please

advise."[19] McNamee followed up with Barbagello and DHS on three separate occasions, twice in

April 2019 and once in June 2019.[20] In the interim, Plaintiff was permitted to report to work with

his full-length beard.[21]

---

[14] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶¶ 29(a), 30(a).

[15] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 31(a); Def.'s Mot. Summ. J. Ex. E [Doc. No. 18-6] at ECF page 12.

[16] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 31(a).

[17] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 33(a); Def.'s Mot. Summ. J. Ex. I [Doc. No. 18-10].

[18] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 34(a); Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11] at ECF page 4.

[19] Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11] at ECF page 4.

[20] Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11] at ECF pages 1-4.

[21] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 36(a).

In April 2019 (while Plaintiff's request was still pending), Plaintiff visited another Imam and asked for a note stating that he could not shave his beard.[22] This Imam, whom Plaintiff did not know personally, provided Plaintiff with a letter that stated the following, in relevant part:

> "This letter is to inform you that shaving one's beard is not permissible in Islam. According to all Islamic denominations a man is required to keep a well maintained beard . . . In Islam it is haram (sinful) to cut the beard. Unfortunately, due to religious obligation, the employee will be unable to shave his beard. He is required, however, to make sure his beard is groomed and maintained in a presentable manner."[23]

Plaintiff submitted this letter to McNamee, who then forwarded it to DHS for consideration.[24]

## 1. *Pre-Waiver Disciplinary Issues*

On June 17, 2019, Plaintiff was involved in a verbal altercation with a PSO that resulted in Plaintiff receiving a "verbal warning."[25] On August 13, 2019, Plaintiff was involved in another altercation with a different PSO, Linwood Banks.[26] Defendant obtained written statements from Plaintiff, PSO Banks, and another PSO who had witnessed the altercation.[27] Plaintiff's written statement alleged that PSO Banks "pushed the stool that [Plaintiff] was using" and that Plaintiff called PSO Banks a "dumb bitch."[28] Both Plaintiff and PSO Banks were suspended for five days for

---

[22] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 38(a).

[23] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 38(a); Def.'s Mot. Summ. J. Ex. L [Doc. No. 18-13] (emphasis omitted).

[24] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 40(a); Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11] at ECF pages 2-3.

[25] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 43(a). Pursuant to Defendant's "Progressive Disciplinary Policy," verbal warning is the first level of disciplinary action, followed by written warning; suspension; and termination of employment. Def.'s Mot. Summ. J. Ex. K [Doc. No. 18-12].

[26] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 44(a).

[27] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 45(a); *see* Def.'s Mot. Summ. J. Ex. O [Doc. No. 18-16].

[28] Def.'s Mot. Summ. J. Ex. O [Doc. No. 18-16] at ECF page 10.

"engaging in a verbal altercation while on duty or on government property," and were each transferred to different shifts upon return.[29]

Plaintiff contends that prior to this altercation, PSO Banks "made discriminatory remarks regarding Muslim people, including, but not necessarily limited to, telling Plaintiff to watch Muslim visitors at the [f]ederal site they both worked at more closely, referring to Muslim individuals as 'your people,' or words to that effect, [and] calling Plaintiff a 'Haji' or words to that effect."[30] Plaintiff alleges that PSO Banks also said he "would call out of work if Plaintiff wore a Kufi, a religious hat, during Ramadan, or words to that effect."[31] Plaintiff did not report these remarks to Defendant, and Plaintiff's written statement did not indicate that he had ever been subjected to discriminatory conduct at the workplace.[32]

## B.  The Accommodation Approval

On August 21, 2019, Lauren Walding, Region 3 COR Supervisor of DHS, emailed McNamee stating, "Based on the information and guidance offered by our Legal, it appears that the accommodation granted by [Defendant] to the PSO (with the approval/concurrence of your Legal office) may go forward. Note: this accommodation is granted by the vendor and NOT FPS, and has to be in accordance with the standards of the ['Statement of Work'] and SMART Book."[33]

On September 18, 2019, Defendant issued Plaintiff a "shaving waiver card."[34] Defendant's "Shaving Waiver Policy" provides that "[the] shaving waiver card . . . shall be carried by the

---

[29] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 49(a); Def.'s Mot. Summ. J. Ex. P [Doc. No. 18-17].

[30] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 73.

[31] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 73.

[32] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 73; *see* Def.'s Mot. Summ. J. Ex. O [Doc. No. 18-16] at ECF page 10.

[33] Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11] at ECF page 2 (emphasis omitted).

[34] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 42(a).

uniformed personnel while on duty and displayed upon direction from a supervisor or an FPS agent."[35] The Shaving Waiver Policy further states that "approved facial hair shall not extend 1/4 [of an inch] from the surface of the face and neck," and must "be trimmed and groomed to 1/4 [of an inch] from the surface of the face and neck with a beard trimmer, scissors, or other trimming device."[36]

The parties dispute whether the Shaving Waiver Policy was in effect in September 2019, as the Policy identifies June 9, 2017 as its "Effective Date," but lists June 9, 2021 as the "Issue Date."[37] However, there is no dispute that Plaintiff signed the shaving waiver card, which states the following terms: "I understand that this waiver permits me to maintain a beard of not more than 1/4 [of an inch] and neatly trimmed" ("the Waiver Terms").[38] The waiver card separately provides that "[t]his card must be worn at all times while on duty;" "[t]his officer's condition has been properly documented;" and "[t]his card is valid for 120 days from the issue date."[39]

### 1. *Post-Waiver Disciplinary Issues*

On October 25, 2019, Plaintiff received a verbal warning for violating the Waiver Terms when he reported to work with a beard longer than one-quarter of an inch.[40] Several days later, Plaintiff's training manager allegedly "put[] . . . his finger on [Plaintiff's] beard" and "made a

---

[35] Def.'s Mot. Summ. J. Ex. F [Doc. No. 18-7].

[36] Def.'s Mot. Summ. J. Ex. F [Doc. No. 18-7] (capitalization and punctuation modified).

[37] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 21(a); Def.'s Mot. Summ. J. Ex. F [Doc. No. 18-7].

[38] Def.'s Mot. Summ. J. Ex. M [Doc. No. 18-14] (italicization removed and colon added); *see* Pl.'s Dep. Ex. B [Doc. No. 18-3] at ECF page 100.

[39] Def.'s Mot. Summ. J. Ex. M [Doc. No. 18-14].

[40] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 52(a).

cutting motion."[41] Plaintiff reported this conduct to his Shop Steward and "Captain Bohrer."[42] This report was not produced in discovery.

Plaintiff violated the Waiver Terms on two more occasions, which resulted in Defendant suspending Plaintiff for one day in February 2020.[43] In June 2020, Plaintiff violated the Waiver Terms for a fourth time, which prompted a two-day suspension.[44] Since the June 2020 suspension, Plaintiff has not received any discipline related to his facial hair or the Waiver Terms.[45] Plaintiff is the only Muslim PSO who has been suspended for violating Defendant's beard requirements.[46] Plaintiff remains employed by Defendant, and he continues to possess a shaving waiver card.[47]

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[49] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[50] To evaluate a motion for summary judgment, the court must "view the facts in the light most

---

[41] Pl.'s Dep. Ex. B [Doc. No. 18-3] at ECF page 142-43; Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 63; Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 5.

[42] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 63. Plaintiff does not identify who Captain Bohrer is in relation to Plaintiff or Defendant.

[43] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶¶ 53(a), 54(a).

[44] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 55(a).

[45] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 56(a).

[46] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 57(a).

[47] Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 59(a).

[48] Fed. R. Civ. P. 56(a).

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[50] *Id.*

favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[51] Nonetheless, the non-moving party must support its opposition to the motion by pointing to evidence in the record.[52] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[53]

## III.   DISCUSSION

### A. Religious Discrimination

Where, as here, there is no direct evidence of discriminatory motive, the Court assesses employment discrimination claims using the *McDonnell Douglas* framework.[54] To assert a *prima facie* case, a plaintiff must demonstrate "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."[55] A plaintiff may satisfy the fourth element of the *McDonnell Douglas* test by showing either that a similarly situated person outside of the protected class was treated more favorably, or that the circumstances of the adverse action give rise to the inference of discrimination.[56]

The parties dispute only the fourth element of the *McDonnell Douglas* test.[57] Plaintiff argues for the first time in his opposition brief that he was subjected to a hostile work environment based on his religion, and that this conduct "constitutes religious discrimination."[58] However, a hostile

---

[51] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[52] *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986).

[53] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[54] *See, e.g., Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[55] *Mercado v. Donahoe*, 487 F. App'x 15, 17 (3d Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

[56] *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-74 (3d Cir. 2010).

[57] Def.'s Mot. Summ. J. [Doc. No. 18] ¶ 6.

[58] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 2.

work environment claim is separate and distinct from a discrimination claim,[59] and the Third Circuit has held that "after a plaintiff files an EEOC complaint, any subsequent Title VII claims are limited to those contained in his EEOC complaint."[60] Neither Plaintiff's EEOC Charge nor his Complaint alleged a hostile work environment claim, and no request to amend his Complaint was ever submitted.[61] Accordingly, the Court will consider Plaintiff's arguments as to the purported "hostility"[62] and "harassment"[63] only insofar as they are pertinent to his claims for religious discrimination and retaliation.

Plaintiff argues that the following circumstances support an inference of discrimination: (1) McNamee stating that Defendant does not accept religious accommodations and that "this was not the job for [Plaintiff]"; (2) Plaintiff's training manager putting his fingers on Plaintiff's beard to make "a cutting motion"; (3) "suspensions associated with the length of his beard"; and (4) "the withholding of [Plaintiff's] waiver for over a year."[64] Plaintiff further argues that "Defendant did not have a policy in place at the time for religious accommodations, the waiver card given to Plaintiff indicated he had a documented condition and expired after 120 days, and there is no evidence that the permanence of this waiver was communicated to Plaintiff."[65]

---

[59] Plaintiff acknowledges that these are two distinct claims, but he briefs them under one heading dedicated solely to "Plaintiff's *prima facie* case of religious discrimination" section. *See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 4-8.

[60] *Rowan v. City of Bayonne*, 474 F. App'x 875, 878 (3d Cir. 2012) (citing *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) ("[Plaintiff's] EEOC complaint addressed only the City's failure to promote him and retaliation based on his engaging in protected speech. Thus, the District Court properly disregarded [Plaintiff's] hostile work environment allegations.").

[61] Plaintiff filed his EEOC Charge on January 13, 2020, alleging that he was "discriminated against due to [his] religion, denied a reasonable religious accommodation and retaliated against for requesting a religious accommodation in violation of Title VII." Def.'s Reply Ex. 1 [Doc. No. 21-2] at ECF page 3. Plaintiff's Complaint alleges two counts of religious discrimination and two counts of retaliation, in violation of Title VII and the PHRA. *See* Compl. [Doc. No. 1].

[62] *See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 2; Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 5-7 (arguing hostile work environment).

[63] *See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 6-7, 9.

[64] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 6-7.

[65] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 7.

As an initial matter, Plaintiff's arguments concerning the "suspensions associated with the length of his beard" are without merit. It is undisputed that Plaintiff requested an accommodation, received the accommodation, failed to comply with the terms of the accommodation, and was suspended as a result.[66] While Plaintiff now argues that "[h]is sincerely held religious beliefs prohibit him [from] shaving or trimming his beard down to [one-quarter of an inch]," he offers only his own deposition testimony to support this assertion.[67] The Third Circuit has recognized that a party's "self-serving deposition testimony" cannot raise a genuine issue of material fact where it "directly conflict[s]" with other evidence of record.[68] Here, Plaintiff concedes that he never "g[ave] any letter to [Defendant] that says under Islamic law, an individual cannot trim their beard down to a quarter inch."[69] Rather, the letters from Plaintiff's Imams provided that "[t]rimming and cutting short the beard is allowed," and that Plaintiff's beard must be "groomed and maintained in a presentable manner."[70] While both letters emphasized that Plaintiff may not *shave* his beard, neither indicated that he is prohibited from trimming it to one-quarter of an inch.[71]

Plaintiff also fails to adequately support his claim that Defendant deliberately prolonged the waiver-approval process. The uncontested evidence shows that McNamee submitted Plaintiff's request to DHS, followed up with DHS on three separate occasions, and issued Plaintiff's waiver card upon receiving authorization to do so.[72] Moreover, it appears that Plaintiff in fact *benefitted*

---

[66] *See* Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶¶ 32(a), 41(a)-42(a); 52(a)-56(a).

[67] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 6; Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 61 (citing Pl.'s Dep. Ex. B [Doc. No. 18-3] at ECF pages 46-47).

[68] *See Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011); *Solomon v. Soc'y of Auto. Engineers*, 41 F. App'x 585, 586 (3d Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) ("The District Court correctly rejected all of these allegations, stating that the only evidence in support of these claims was [the plainitff's] own testimony.").

[69] Pl.'s Dep. Ex. B [Doc. No. 18-3] at ECF page 89.

[70] Def.'s Mot. Summ. J. Ex. I [Doc. No. 18-10], Ex. L [Doc. No. 18-13].

[71] *See* Def.'s Mot. Summ. J. Ex. I [Doc. No. 18-10], Ex. L [Doc. No. 18-13].

[72] *See* Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11]; Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 42(a). Although Plaintiff contends that "this shaving waiver card was written for medical conditions,"

from the purported "delay," as Defendant permitted him to "report to work with whatever length beard he chose" while his application was pending.

Finally, to the extent that Plaintiff claims he was subjected to "hostility" and "harassment," these isolated incidents are not actionable under Title VII.[73] PSO Banks' comments, albeit inappropriate and unkind, amount to "several stray remarks by a nondecisionmaker," which cannot form the basis of a discrimination suit.[74] Similarly, the conduct of Plaintiff's training manager (who made "a cutting motion" against Plaintiff's beard) fails to sufficiently suggest religious enmity.[75] Nor has Plaintiff set forth any evidence from which a reasonable factfinder could conclude that Defendant treated a similarly situated person outside of Plaintiff's protected class more favorably. To the contrary, Plaintiff avers that PSOs within his protected class received *more* preferential treatment than him after engaging in the same conduct.[76]

In short, Plaintiff bases his discrimination claims on nothing more than "a subjective belief that his [religion] played a role in an employment decision," which is insufficient to support an inference of discrimination.[77] As Plaintiff cannot meet his burden at the initial *prima face* stage, the Court will grant summary judgment on his religious discrimination claims.

---

Defendant clearly communicated to DHS that Plaintiff was seeking the accommodation for religious purposes. *See* Def.'s Mot. Summ. J. Ex. J [Doc. No. 18-11]. Plaintiff's argument concerning the waiver card's "expiration" is also misplaced, given that Plaintiff concedes he still possesses a shaving waiving card. Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 59(a).

[73] *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 194 (3d Cir. 2015) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)) (internal quotation marks omitted) ("[O]ffhand comments[] and isolated incidents (unless extremely serious) will not . . . violate Title VII").

[74] *See Ezold v. Wolf, Block, Schoor & Solis-Cohen*, 983 F.2d 509, 545, 547 (3d Cir. 1992).

[75] *See Daniels*, 776 F.3d at 194 (quoting *Breeden*, 532 U.S. at 271).

[76] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 9 (alleging that "Plaintiff was treated more harshly than the other Muslim PSOs who also had beards"); *see Alcantara v. Aerotek, Inc.*, No. 18-2576, at *13 (3d Cir. Mar. 25, 2019) (holding that evidence that defendant treated a member of plaintiff's protected class more favorably "undermined [plaintiff's] claim that her termination was racially motivated").

[77] *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013).

### B. Retaliation

Plaintiff next argues that Defendant "retaliated against him for engaging in the protected activity of requesting a religious accommodation."[78] To establish a *prima facie* retaliation claim, Plaintiff must demonstrate that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and his employer's adverse action.[79] To show a causal connection, a plaintiff must show either an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link.[80] A "pattern of antagonism" is a consistent and continuous pattern of conduct, which can include a "constant barrage of written and verbal warnings," as well as disciplinary action.[81]

Plaintiff argues that Defendant retaliated against him with respect to the suspensions he received (1) after his altercation with PSO Banks and (2) after he violated the Waiver Terms. As explained above, the undisputed evidence of record demonstrates that Defendant levied the post-waiver suspensions because Plaintiff repeatedly violated the Waiver Terms. Plaintiff's assertion that he "received suspensions for the length of his facial hair when others did not" and that he "attributed this to the fact that Plaintiff was the first to challenge the policy" is insufficient to create a genuine issue of material fact.[82] In the absence of any additional evidence, Plaintiff has failed to show a causal connection between his accommodation request and the grooming-related suspensions that occurred roughly one year later.[83]

---

[78] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 1.

[79] *Swanson v. Nw. Hum. Servs., Inc.*, 276 F. App'x 195, 196 (3d Cir. 2008) (citing *Charlton v. Paramus Bd. of Ed.*, 25 F.3d 194, 201 (3d Cir.1994)).

[80] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[81] *See Bartos v. MHM Corr. Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011) (citation omitted).

[82] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 9.

[83] *See, e.g., See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir.1997) (emphasizing that "the alleged comment occurred four or five months prior to the time when Ryan decided that Keller should be discharged");

As for the pre-waiver disciplinary actions, Plaintiff's arguments are similarly unavailing. Plaintiff claims that he and PSO Banks should not have "receiv[ed] the same degree of suspension" because "Plaintiff's participation was only verbal" whereas "PSO Banks' participation was physical in nature."[84] This argument suggests only that Plaintiff disagreed with Defendant's decision, not that the action was causally related to the protected activity. And while Plaintiff has asserted a few incidents of antagonistic behavior, he has not shown that the conduct was so continuous or pervasive as to constitute "a pattern of antagonism."[85]

Because Plaintiff has failed to produce evidence from which a reasonable factfinder could determine that Defendant retaliated against Plaintiff for requesting an accommodation, the Court will grant summary judgment on his retaliation claims.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff has failed to show that a genuine issue of material fact exists on any of his claims. The Court therefore will grant Defendant's motion for summary judgment. An appropriate order follows.

---

*Ragusa v. Lehigh Univ.*, No. 18-3362, 2021 WL 1175153, at *10 (E.D. Pa. Mar. 29, 2021) (granting summary judgment on Plaintiff's ADA retaliation claim where "Plaintiff's only support for such claims are her own allegations in her Complaint . . . none of [which] were ever flushed out during discovery.").

[84] Pl.'s Mem. Opp. Def.'s Mot. Summ. J. [Doc. No. 20-1] at 9; Pl.'s Suppl. Resp. Def.'s Statement Material Facts [Doc. No. 20-2] ¶ 72.

[85] *See, e.g.*, *Elms v. W. Chester Borough*, No. 21-279, 2021 WL 5003332, at *4 (E.D. Pa. Oct. 28, 2021) (distinguishing a "few instances of boorish behavior" from a "consistent and continuous pattern of conduct").